IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-91-D

| | | |
|---|---|---|
| DOROTHY H. ORTIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| THE VANCE COUNTY SCHOOL, | ) | |
| ADMINISTRATIVE UNIT, and | ) | |
| VANCE COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

On December 21, 2018, Dorothy H. Ortiz ("Ortiz" or "plaintiff") filed a second amended complaint against the Vance County School Administrative Unit, d/b/a Vance County Public Schools ("VCPS"), and the Vance County Board of Education (the "Board"; collectively "defendants") alleging age and disability discrimination, retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and intentional infliction of emotional distress ("IIED") [D.E. 40]. On January 4, 2019, defendants moved to dismiss Ortiz's second amended complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted [D.E. 41] and filed a memorandum in support [D.E. 42]. On January 25, 2019, Ortiz responded in opposition [D.E. 43, 44]. On February 7, 2019, defendants replied [D.E. 45]. As explained below, the court grants defendants' motion to dismiss and dismisses Ortiz's second amended complaint.

I.

Ortiz began working at Western Vance High School ("Western Vance") in November 1999. See 2d Am. Compl. [D.E. 40] 3 ¶ 1. Ortiz initially worked as a computer skills instructor, but was paid as a teacher's assistant. See id. ¶ 2. While Ortiz worked at Western Vance, Ortiz earned "two associate degrees and a bachelor degree." Id. ¶ 7. Ortiz suffers from musculoskeletal degeneration, and repetitive bending, stooping, and lifting movements worsen her chronic condition. See id. ¶ 18.

In March 2012, Clarence Hicks ("Hicks"), the principal of Western Vance, informed Ortiz that defendants were eliminating her position as a teaching assistant in the computer lab and that the only positions available were in classrooms with young children. See id. ¶ 19. Because these jobs would require bending, stooping, and lifting, see id., Ortiz opted to use her short-term disability benefits. See id. at 6 ¶ 21. On April 16, 2012, Ortiz alleges that defendants first denied her request for a reasonable accommodation (i.e., "placement in a desk job out of the classroom."). Id. ¶ 3.

In April 2014, Ortiz's doctor certified that Ortiz could perform jobs with minimal bending, stooping, and lifting, and suggested a desk job as a reasonable accommodation. See id. ¶ 22. On April 14, 2014, Angela Miles ("Miles"), the Assistant Human Resources Director, informed Ortiz that Western Vance did not have any jobs that met the doctor's certification. See id. ¶ 23. In July 2014, Ortiz requested assignment to a vacant position as a front desk receptionist, but Miles informed Ortiz that Ortiz must obtain "a second fitness for duty certification" from her doctor concerning the position. Id. ¶¶ 25–26. On July 24, 2014, Ortiz returned her doctor's certification for the position. See id. ¶ 27. In August 2014, Ortiz learned that a "substantially younger," non-disabled employee had obtained the position. Id. ¶ 28. In September 2014, Ortiz applied for three similar positions for which she was qualified, but in each case defendants selected a younger, non-disabled candidate. See id. ¶ 29. At the time, Ortiz was 55 years old. See id. ¶ 31.

On November 1, 2014, defendants terminated Ortiz due to "a reduction in force." See id. ¶ 4.[1] On May 21, 2015, Ortiz filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination, age discrimination, and retaliation. See id. ¶ 5; [D.E. 41-1].

Defendants attended an EEOC mediation with Ortiz. See [D.E. 44] 1. Although the mediation was not successful, on November 9, 2015, defendants re-hired Ortiz as a receptionist/bookkeeper/data manager. See 2d Am. Compl. [D.E. 40] ¶ 6. Ortiz's responsibilities included tracking student attendance, taking calls and messages, maintaining payroll, and greeting visitors. See id. ¶ 8. Ortiz alleges that she did not receive formal training for the position beyond a meeting with an accountant concerning audits. See id. ¶¶ 9–11. Nonetheless, Hicks informed Ortiz that he asked staff to provide formal training to Ortiz three times. See id. ¶ 11. Ortiz also alleges that defendants paid her at the bottom of the pay scale despite her education and experience. See id. ¶ 9.

On December 9, 2015, Ortiz received two disciplinary actions. See id. ¶¶ 12–13. The first disciplinary action concerned Ortiz's professionalism. Hicks notified Ortiz that "he received numerous complaints about [Ortiz] getting involved in school issues that did not involve her." Id. ¶ 12. Hicks also said that "some of the teachers did not like [Ortiz's] tone." Id. Ortiz alleges that any interactions with other teachers concerned "asking them to complete their attendance and report it to" her. Id. Ortiz alleges that Hicks did not provide any training or suggestions for improvement during this meeting. See id. The second disciplinary action concerned a sick student. See id. ¶ 13.

---

[1] In Ortiz's second amended complaint, she alleges that she worked at Western Vance from November 1999 until April 2012. See 2d Am. Compl. [D.E. 40] ¶ 1. In Ortiz's initial complaint, Ortiz alleged that she worked at Western Vance from November 1999 until November 1, 2014. See Compl. [D.E. 1] 2 ¶ 1.

Ortiz alleges that a student came to see her and complained about chest pains. See id. Ortiz claims that, because she had not received training on how to handle such a situation, she called Jeanette Noel ("Noel"), a long-time colleague and friend, who told Ortiz to call the school nurse. See id. Ortiz alleges that her second disciplinary action was for violating the "student's privacy rights." Id.

On December 10, 2015, Ortiz received a third disciplinary action because she held Noel's paycheck. See id. ¶ 14. Hicks gave Ortiz a memorandum concerning distribution of paychecks. See id. Ortiz alleges that she "wanted to talk to Ms. Noel and had stored Ms. Noel's check until they could have a face-to-face conversation with each other." Id. On December 21, 2015, Ortiz submitted a second charge to the EEOC alleging a hostile work environment and retaliation in violation of Title VII. See id. ¶ 8. On July 17, 2016, Ortiz's doctor "took her out of work due to work related health issues." Id. ¶ 16.

On December 4, 2017, the EEOC issued a dismissal and right to sue notice concerning Ortiz's December 2015 EEOC charge. See id. ¶ 8; [D.E. 40-1]. On September 18, 2018, the EEOC issued a dismissal and right to sue notice concerning Ortiz's May 2015 EEOC charge. See 2d Am. Compl. [D.E. 40] ¶ 9; [D.E. 40-2].

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570;

Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motion to dismiss requires the court to consider the plaintiffs' state-law claims, and the parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other

states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted).

A.

Ortiz first claims that defendants discriminated against her based on her age and disability. See 2d Am. Compl. [D.E. 40] ¶¶ 18–34. Ortiz claims that she suffers from a chronic disability, musculoskeletal degeneration, and that repetitive bending, stooping, and lifting motions aggravate her condition. See id. ¶ 18. Ortiz claims that defendants took adverse employment action against her because of her disability, repeatedly denied her reasonable accommodations, and that "age was a factor" in their decision to terminate her on November 1, 2014. See id. ¶¶ 32–34.

Under Title VII, the Americans with Disability Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"), a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before filing suit in federal court. See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. § 626(d); Sydnor v. Fairfax Cty., 681 F.3d 591, 593 (4th Cir. 2012); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Thiessen v. Stewart-Haas Racing, LLC, 311 F. Supp. 3d 739, 743 (M.D.N.C. 2018); Bratcher v. Pharm. Prod. Dev., Inc.,

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

545 F. Supp. 2d 533, 538–39 (E.D.N.C. 2008). Accordingly, a district court has subject-matter jurisdiction over a Title VII, ADEA, or ADA claim only if the plaintiff exhausted administrative remedies by filing an EEOC charge concerning the alleged discrimination before filing suit. See, e.g., Jones, 551 F.3d at 300; Tagirova v. Elizabeth City State Univ., No. 2:16-CV-70-D, 2017 WL 4019516, at *1 (E.D.N.C. Sept. 11, 2017) (unpublished); Webb v. N.C. Dep't of Crime Control & Pub. Safety, 658 F. Supp. 2d 700, 707–09 (E.D.N.C. 2009).[3] Requiring a plaintiff to file a charge with the EEOC concerning the alleged discrimination before filing suit is an "integral part of the [statutory] enforcement scheme[s]." Sydnor, 681 F.3d at 593 (quotation omitted); see Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406–07 (4th Cir. 2013).

Under both the ADEA and the ADA, Ortiz had 180 days to file an EEOC charge. See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. § 626(d). The 180-day time requirement is not jurisdictional and is subject to waiver, estoppel, and equitable tolling. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Nonetheless, the requirement to exhaust administrative remedies by filing a charge with the EEOC concerning the alleged discrimination before filing suit is jurisdictional. See Jones, 551 F.3d at 300.

A failure to file a timely EEOC charge does not itself constitute a failure to exhaust administrative remedies. See Hentosh v. Old Dominion Univ., 767 F.3d 413, 417 (4th Cir. 2014). However, if a party fails to timely file an EEOC charge, the party "lose[s] the ability to recover for" that claim because the claim is no longer "actionable." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 113 (2002). As the Supreme Court explained in Morgan, "only incidents that took

---

[3] The federal circuit courts are split concerning whether Title VII's administrative exhaustion requirement is jurisdictional. See Davis v. Fort Bend Cty., 893 F.3d 300, 306–07 (5th Cir. 2018) (collecting cases), petition for cert. granted, 139 S. Ct. 915 (2019). The Fourth Circuit treats the administrative exhaustion requirement as jurisdictional. See Jones, 551 F.3d at 300.

7

place within the timely filing period are actionable." Id. at 114; see Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 623–24 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.

As for Ortiz's age and disability discrimination claims, Ortiz's EEOC charge of May 21, 2015, was not timely because she filed it more than 180 days after her discharge on November 1, 2014. See Morgan, 536 U.S. at 110, 113; Cooper v. Smithfield Packing Inc., No. 5:10-CV-479-F, 2011 WL 3207912, at *3 (E.D.N.C. July 27, 2011) (unpublished). Accordingly, Ortiz's age and disability discrimination claims are not actionable.

In opposition to this conclusion, Ortiz makes two arguments. First, Ortiz argues that she had 300 days to file a charge with the EEOC. See [D.E. 44] 10. A plaintiff has 300 days to file an EEOC charge "in a deferral state if the plaintiff initially instituted proceedings with a designated Fair Employment Practices state or local agency." Bratcher, 545 F. Supp. 2d at 539 (quotation and alteration omitted); see 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(1)(B), 633(b). However, in "the overwhelming number of cases, it is accurate to describe North Carolina as a non-deferral state with a 180-day filing period." Bratcher, 545 F. Supp. 2d at 543. The two narrow exceptions to this characterization do not apply to Ortiz. See id. Thus, the court rejects this argument.

Second, Ortiz argues that the continuing action doctrine applies to her age and disability discrimination claims. See [D.E. 44] 11. But the continuing action doctrine does not apply to discrete actions, such as employment termination. See Morgan, 536 U.S. at 113. Moreover, and in any event, because none of the actions that Ortiz identifies occurred during the 180-day period before May 21, 2015, the continuing action doctrine would not help Ortiz. See Morgan, 536 U.S. at 114–15; U.S. Equal Emp't Opportunity Comm'n v. Phase 2 Invs. Inc., 310 F. Supp. 3d 550, 574–75 (D. Md. 2018); Williams v. N.C. Admin. Office of the Courts, No. 4:18-CV-63-D, 2018 WL

8

6345367, at *4–5 (E.D.N.C. Dec. 4, 2018). Accordingly, the court grants defendants' motion to dismiss Ortiz's age and disability discrimination claims.

B.

As for Ortiz's Title VII hostile work environment claim, Ortiz claims that she is part of "several protected groups" under Title VII and that she experienced harassment because of her EEOC filing. See 2d Am. Compl. [D.E. 40] ¶¶ 35–40. Specifically, Ortiz claims that the disciplinary actions taken against her constitute illegal harassment. See id. ¶ 37.

To sustain a hostile work environment claim under Title VII, an employee must prove that (1) she experienced unwelcome conduct; (2) the conduct was based on a protected characteristic under Title VII; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) the conduct is imputable to the employer. See, e.g., Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011); EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Coleman v. Altec, Inc., No. 5:16-CV-954-D, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cty. Gov't, No. 5:16-CV-806-D, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished); Benjamin v. Sparks, 173 F. Supp. 3d 272, 284 (E.D.N.C. 2016). An employee also must show that her protected characteristic under Title VII was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment, the court examines

9

the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Harris, 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, No. 16-2439, 2019 WL 1556133, at *14 (4th Cir. Apr. 10, 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Boyer-Liberto, 786 F.3d at

277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds v. Leavitt, 629 F.3d 369, 385–86 (4th Cir. 2011); Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; Coleman, 2018 WL 4289610, at *3–4; Brown, 2017 WL 2982971, at *5; cf. Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22. Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5.

Viewing the record in the light most favorable to Ortiz, Ortiz has failed to plausibly allege a hostile work environment claim. Even assuming that Ortiz has plausibly alleged that she experienced unwelcome conduct based on the disciplinary actions taken against her, Ortiz has failed to allege that she experienced such unwelcome conduct because of a protected characteristic under Title VII. Moreover, Ortiz has failed to plausibly allege that the conduct was sufficiently severe or pervasive as to alter the conditions of her employment. See, e.g., Irani, 2019 WL 1556133, at *14–15; Bonds, 629 F.3d at 385–86; Baqir, 434 F.3d at 746–47; Brown, 2017 WL 2982971, at *6. Accordingly, the court grants defendants' motion to dismiss Ortiz's hostile work environment claim.

C.

As for Ortiz's Title VII retaliation claim, Ortiz claims that she engaged in protected activity by filing a charge with the EEOC in May 2015. See 2d Am. Compl. [D.E. 40] ¶¶ 41–47. Even though defendants re-hired Ortiz in November 2015, Ortiz claims that defendants retaliated against

11

her for filing the May 2015 EEOC charge by improperly training Ortiz and taking numerous disciplinary actions against her. See id. ¶¶ 45–46.

To state a prima facie claim of retaliation in violation of Title VII, an employee must allege that (1) she engaged in protected activity; (2) her employer took an action against her that a reasonable employee would find materially adverse; and (3) a casual connection existed between the protected activity and the adverse employment action. See Burlington N. & Sante Fe Ry., 548 U.S. at 67–70; DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto, 786 F.3d at 271, 281; Balas, 711 F.3d at 410; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001); Brown v. Goodwill Indus. of E. N.C., Inc., No. 4:17-CV-144-D, 2018 WL 2422315, at *2 (E.D.N.C. May 29, 2018) (unpublished); Brown, 2017 WL 2982917, at *4; Johnson v. Pitt Cty. Bd. of Educ., No. 4:16-CV-214-D, 2017 WL 2304211, at *12 (E.D.N.C. May 25, 2017) (unpublished); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362–63 (2013). To survive a motion to dismiss, a Title VII plaintiff need only plausibly allege a statutory claim, not a prima facie case. See McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585–88 (4th Cir. 2015); cf. 42 U.S.C. § 2000e-3(a).

In relevant part, Title VII's retaliation provision prohibits an employer from discriminating against any individual "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII protects two kinds of activities: opposition and participation. See id.; Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "[O]ppositional activity must be

12

directed to 'an unlawful employment practice' under Title VII . . . ." DeMasters, 796 F.3d at 417; see Boyer-Liberto, 786 F.3d at 282; Bonds, 629 F.3d at 384; Laughlin, 149 F.3d at 259. An "employee is protected when she opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful [under Title VII]." DeMasters, 796 F.3d at 417 (quotation and alteration omitted); see Boyer-Liberto, 786 F.3d at 282. Participation activity is defined in Title VII as "making a charge, testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); see Laughlin, 149 F.3d at 259.

Ortiz engaged in protected activity when she filed an EEOC charge on May 21, 2015. Ortiz has failed to allege, however, that her employer took an action against her that a reasonable employee would find materially adverse after it re-hired her on November 9, 2015. An adverse action is material if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry., 548 U.S. at 68 (quotation omitted). "Petty slights, minor annoyances, and simple lack of good manners" are generally insufficient under Title VII to state a retaliation claim. See id.; Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 442 (E.D.N.C. 2012).

Ortiz does not allege that defendants terminated her employment in 2016. Instead, Ortiz alleges that her doctor "took her out of work." 2d Am. Compl. [D.E. 40] ¶ 16. Moreover, although Ortiz alleges that defendants failed to provide job training and clarity concerning her new position in November 2015 and took several disciplinary actions against her, these allegations do not constitute materially adverse action. See Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376–78 (4th Cir. 2004); Boone v. Goldin, 178 F.3d 253, 256–57 (4th Cir. 1999); Holley, 846 F. Supp. 2d at 442–44; cf. Ray

v. Int'l Paper Co., 909 F.3d 661, 670 (4th Cir. 2018). Thus, the court grants defendants' motion to dismiss Ortiz's retaliation claim.[4]

D.

As for Ortiz's IIED claim, Ortiz alleges that she suffers from adjustment disorder with anxiety and depressive mood and that defendants knew of her condition. See 2d Am. Compl. [D.E. 40] ¶¶ 48–57. Ortiz also alleges that defendants "engaged in extreme and outrageous conduct" by taking disciplinary actions against Ortiz for, for example, calling the school nurse concerning a student with chest pains. Id. ¶¶ 53–54.

Under North Carolina law, governmental immunity presents a jurisdictional question. See, e.g., Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 700–01 (E.D.N.C. 2009) (collecting cases); Myers v. McGrady, 360 N.C. 460, 465 n.2, 628 S.E.2d 761, 765 n.2 (2006); Teachy v. Coble Dairies, Inc., 306 N.C. 324, 326–28, 293 S.E.2d 182, 184 (1982). The Supreme Court of North Carolina has not resolved whether governmental immunity presents a defense to subject-matter jurisdiction or personal jurisdiction. See Myers, 360 N.C. at 465 n.2, 628 S.E.2d at 765 n.2. Thus, the court evaluates the Board's motion to dismiss under both standards and applies federal law.

Under Rule 12(b)(1), a plaintiff must prove subject-matter jurisdiction. See, e.g., Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A court regards "the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings

---

[4] The same-actor inference also seriously undermines Ortiz's retaliation claim. Defendants re-hired Ortiz on November 9, 2015, nearly six months after Ortiz filed her first EEOC charge. When defendants re-hired Ortiz, they knew that she had filed an EEOC charge in May 2015. Defendants' decision to re-hire Ortiz on November 9, 2015, conflicts with Ortiz's claim that defendants were then immediately filled with retaliatory animus in late November and December 2015. See, e.g., Proud v. Stone, 945 F.2d 796, 797–98 (4th Cir. 1991); Ricketts v. Logics, LLC, No. 5:15-CV-293-D, 2017 WL 4293406, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (collecting cases).

without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quotation omitted). "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact [concerning jurisdiction] exists." Richmond, 945 F.2d at 768.

Under North Carolina law, a county board of education "may be sued only when and as authorized by statute." Smith v. Hefner, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952); see Benton v. Bd. of Educ., 201 N.C. 653, 161 S.E. 96, 97 (1931) (recognizing the governmental immunity of public schools); Seipp v. Wake Cty. Bd. of Educ., 132 N.C. App. 119, 121, 510 S.E.2d 193, 194 (1999) ("A county or city board of education is a governmental agency, and therefore is not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority."); Hallman v. Charlotte-Mecklenburg Bd. of Educ., 124 N.C. App. 435, 437, 477 S.E.2d 179, 180 (1996); Lindler v. Duplin Cty. Bd. of Educ., 108 N.C. App. 757, 761, 425 S.E.2d 465, 468 (1993); Overcash v. Statesville City Bd. of Educ., 83 N.C. App. 21, 22–23, 348 S.E.2d 524, 526 (1986). Governmental immunity in North Carolina is a "judge-made doctrine" that the legislature later recognized by statute. See Steelman v. City of New Bern, 279 N.C. 589, 594, 184 S.E.2d 239, 242 (1971). The doctrine "is firmly established" and is "the public policy of the State." Id. at 594, 184 S.E.2d at 242. Thus, absent waiver, governmental immunity defeats Ortiz's IIED claim. See Lail ex rel. Jestes v. Cleveland Cty. Bd. of Educ., 183 N.C. App. 554, 561, 645 S.E.2d 180, 186 (2007); Craig ex rel. Craig v. New Hanover Bd. of Educ., 185 N.C. App. 651, 654–55, 648 S.E.2d 923, 925–26 (2007), rev'd on other grounds, 363 N.C. 334, 678 S.E.2d 351 (2009); Ripellino v. N.C. Sch. Bds. Ass'n, 158 N.C. App. 423, 428, 581 S.E.2d 88, 92 (2003); Lucas v. Swain Cty. Bd. of Educ., 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002); Seipp, 132 N.C.

App. at 121, 510 S.E.2d at 194.

Under North Carolina law, school boards are immune from tort claims unless they possess liability insurance. See N.C. Gen. Stat. § 115C-42; Biggs v. Edgecombe Cty. Pub. Sch. Bd. of Educ., No. 4:16-CV-271-D, 2018 WL 4471742, at *8 (E.D.N.C. Sept. 18. 2018) (unpublished); Yarbrough v. E. Wake First Charter Sch., 108 F. Supp. 3d 331, 337, 339 (E.D.N.C. 2015); J.W. v. Johnston Cty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439, at *10–11 (E.D.N.C. Sept. 24, 2012) (unpublished) (collecting cases). Defendants participate in the North Carolina School Boards Trust ("NCSBT") but do not otherwise carry liability insurance, which would waive immunity. See [D.E. 41] ¶¶ 7–9. North Carolina courts strictly construe statutes that authorize waivers of governmental immunity. See, e.g., Frye, 612 F. Supp. 2d at 702; Ripellino, 158 N.C. App. at 428, 581 S.E.2d at 92; Hallman, 124 N.C. App. at 438, 477 S.E.2d at 181. Participation in the NCSBT alone is not "liability insurance" within the meaning of the immunity statute. See Johnston Cty. Bd. of Educ., 2012 WL 4425439, at *10–12; Frye, 612 F. Supp. 2d at 702–03; Craig, 185 N.C. App. at 653–54, 648 S.E.2d at 925; Jestes, 183 N.C. App. at 560–61, 645 S.E.2d at 185; Willett v. Chatham Cty. Bd. of Educ., 176 N.C. App. 268, 269, 625 S.E.2d 900, 901–02 (2006); Ripellino, 158 N.C. App. at 428–29, 581 S.E.2d at 92–93; Lucas, 154 N.C. App. at 361–62, 573 S.E.2d at 540–41. Thus, defendants' participation in the NCSBT does not waive immunity concerning Ortiz's IIED claim. See Johnston Cty. Bd. of Educ., 2012 WL 4425439, at *12; Frye, 612 F. Supp. 2d at 703–04. Accordingly, the court dismisses Ortiz's IIED claim against defendants for lack of subject-matter jurisdiction.

Alternatively, even if the court had subject-matter jurisdiction, Ortiz has not plausibly alleged an IIED claim against defendants. To state an IIED claim, Ortiz must plausibly allege that (1) the defendants engaged in extreme and outrageous conduct; (2) the conduct was intended to cause severe

16

emotional distress; and (3) the conduct in fact caused severe emotional distress. See Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). To be considered "extreme and outrageous," the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See, e.g., Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Under North Carolina law, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support an IIED claim. See, e.g., Everett v. Redmon, No. 7:16-CV-323-D, 2017 WL 2313468, at *9 (E.D.N.C. May 26, 2017) (unpublished); Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 340–41 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); Bratcher, 545 F. Supp. 2d at 544–45 (collecting cases); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004); Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999). "[L]iability clearly does not extend to mere insults, indignities, [or] threats . . . ." Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123. Rather, "[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." Bratcher, 545 F. Supp. 2d at 545 (collecting cases); see Moody-Williams v. LipoScience, 953 F. Supp. 2d 677, 683 (E.D.N.C. 2013); Payne v. Whole Foods Mkt. Grp., Inc., 812 F. Supp. 2d 705, 710 (E.D.N.C. 2011), aff'd, 471 F. App'x 186 (4th Cir. 2012) (per curiam) (unpublished).

Ortiz does not plausibly allege that defendants directed any sexual or racial harassment, threats of physical or emotional harm, physical contact, or other similar misconduct at her. See 2d Am. Compl. [D.E. 40] ¶¶ 48–57. As a matter of law, defendants' alleged conduct is not extreme and outrageous conduct. See, e.g., Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 774 (4th Cir. 1997); Everett, 2017 WL 2313468, at *9; Howard, 262 F. Supp. 3d at 340–41; Moody-Williams, 953 F. Supp. 2d at 682–84; Payne, 812 F. Supp. 2d at 710; Bratcher, 545 F. Supp. 2d at 544–45; Sims-Campbell v. Welch, 239 N.C. App. 503, 509, 769 S.E.2d 643, 648–49 (2015); Hogan, 79 N.C. App. at 493–94, 340 S.E.2d at 122–23. Accordingly, the court grants defendants' motion to dismiss Ortiz's IIED claim.

As for Ortiz's claim for punitive damages, Ortiz cannot recover punitive damages because, she has not alleged any claim sufficient to survive defendants' motion to dismiss. Accordingly, the court grants defendants' motion to dismiss Ortiz's claim for punitive damages.

### III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 41] and DISMISSES WITHOUT PREJUDICE Ortiz's second amended complaint. The clerk shall close the case.

SO ORDERED. This 30 day of April 2019.

JAMES C. DEVER III
United States District Judge